GIBSON, DUNN & CRUTCHER LLP
THEANE D. EVANGELIS, SBN 243570
tevangelis@gibsondunn.com
HEATHER L. RICHARDSON, SBN 246517
hrichardson@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
dmanthripragada@gibsondunn.com
BRANDON J. STOKER, SBN 277325
bstoker@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Defendants
SCALE AI, INC., SMART ECOSYSTEM, INC.
and OUTLIER AI, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ANGELA SCHUSTER, ANNA PENDLETON, HOWARD QUATTLEBAUM, XAVIER RETANA, LATOYA HOWARD, and STEVE MCKINNEY, individually, and on behalf of all other similarly situated,

Plaintiffs,

v.

SCALE AI, INC., a corporation; SMART ECOSYSTEM, INC., a corporation; OUTLIER AI, INC, a corporation; and DOES 1–50, inclusive,

Defendants.

CASE NO. 3:25-cv-00620-JSC

**DECLARATION OF CHRISTOPHER STEPHENS IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY CIVIL COURT PROCEEDINGS**

[*Filed Concurrently with Defendants' Notice of Motion and Motion to Compel Arbitration and Stay Civil Court Proceedings, Declaration of Brandon J. Stoker, and [Proposed] Order*]

**HEARING:**
Date: July 10, 2025
Time: 10:00 a.m.
Dept: Courtroom 8
Judge: Hon. Jacqueline Scott Corley

Action Filed: January 17, 2025
Trial Date: None Set

# DECLARATION OF CHRISTOPHER STEPHENS

I, Christopher Stephens, declare and state:

1. I submit this Declaration in support of the Motion to Compel Arbitration and Stay Court Proceedings filed by Defendants Scale AI, Inc. ("Scale"), Smart Ecosystem, Inc. ("Smart Ecosystem"), and Outlier AI, Inc. ("Outlier") (collectively, "Defendants").

2. The information set forth herein is true and correct of my own personal knowledge, unless otherwise stated, and if asked to testify thereto, I would do so competently.

3. I am currently employed at Scale as the Director of Platform Engineering.

4. As a result of my position with Scale, I have knowledge of Defendants' operations and business model. I also have access to and personal knowledge of the matters and information set forth in this Declaration and, if called as a witness, I could and would competently and truthfully testify thereto.

5. I have reviewed the documents identified in this declaration that Defendants submit in support of their motion to compel arbitration. The attached records are true and correct copies of records that were kept in the course of usual business activity, were prepared as a regular practice and custom, and were prepared by company personnel in the ordinary course of regularly conducted business at or near the time of the act, event, and communication reported thereon, and by persons with knowledge of and a business duty to record and/or transmit the actions, communications and events that were recorded.

## A. Overview of Scale, Smart Ecosystem, and Their Platforms, Remotasks and Outlier

6. Scale is a humanity-first artificial intelligence ("AI") company that lays the groundwork for AI innovation. Scale offers a variety of products that help build, deploy, and evaluate AI, including products that focus on combining AI tools with human experience to improve the quality of data used to train AI models. Scale operates contributor platforms that connect subject-matter experts ("Contributors" or "Experts") with opportunities to complete project-based work that helps create and curate data needed to produce high-quality AI models.

7. Since May 2023, Scale has used Outlier as the platform through which Contributors can access and contribute to projects or tasks of their choosing. Outlier is run and operated by Scale's

affiliate, Smart Ecosystem. Using Outlier, Contributors have the flexibility to set their own hours and sign up for projects that cater to their personal interests, expertise, and availability. Scale empowers independent Contributors to pursue flexible opportunities to work and earn by connecting them with customers in need of their services.

8. In July 2023, Scale also used Remotasks as a platform through which Contributors could access and contribute to projects or tasks of their choosing. Remotasks is also run and operated by Scale's affiliate, Smart Ecosystem. In May 2024, Contributors who used Remotasks were migrated to Outlier. Once a Contributor is migrated to Outlier, he or she is only permitted to use Outlier.

**B. Plaintiffs Each Created Accounts for Outlier and/or Remotasks**

9. To access projects and begin contributing, Contributors must first create an account on Outlier or, before its migration to Outlier, Remotasks. At all relevant times, Outlier and Remotasks have required every Contributor to accept and agree to the Terms of Use (the "Terms") during the account-creation process. Contributors cannot access, view, or complete any projects without first creating an account and agreeing to the Terms.

10. The Terms for Outlier and Remotasks are substantively identical. Attached hereto as **Exhibit A** is a true and accurate copy of Remotask's Terms, dated February 14, 2023 and printed on March 18, 2025. **Exhibit B** is a true and accurate copy of Outlier's Terms, dated February 7, 2023 and printed on April 19, 2024.

11. I have reviewed Scale's records that include information about Contributors' account activity. This information is recorded contemporaneously at the time of each transaction and is maintained in the regular course of Scale's business.

12. Based on a review of those records, I confirmed that:

a. Plaintiff Angela Schuster made multiple accounts on Remotasks and Outlier. On or about July 16, 2023, Plaintiff Angela Schuster created an account on Remotasks. Plaintiff Angela Schuster migrated to Outlier and created an account on the Outlier website on or about May 18, 2024. On or about July 14, 2024, Plaintiff Angela Schuster created another account on the Outlier website using a different email address.

b. On or about March 8, 2024, Plaintiff Anna Pendleton created an account on Outlier's website.

c. On or about February 28, 2024, Plaintiff Steve McKinney created an account on Outlier's website.

d. On or about June 8, 2024, Plaintiff Xavier Retana created an account on Outlier's website.

e. On or about October 13, 2024, Plaintiff Latoya Howard created an account on Outlier's website.

f. On or about November 27, 2024, Plaintiff Howard Quattlebaum created an account on Outlier's website.

**C. Plaintiff Schuster's Agreement to Remotasks' Terms of Use**

13. In July 2023, when a Contributor would begin the account creation process, the first screen the Contributor saw included a checkbox next to the statement: "I agree to the **Terms of Service** and **EU DPA**." This sentence was presented in black typeface except for the phrases "Terms of Service" and "EU DPA," which were in bold, blue typeface denoting hyperlinks. When clicked, each hyperlink would open a new window with the full text of the Terms of Use and the European Data Processing Addendum agreement, respectively.

14. The version of the Remotasks Terms that was hyperlinked was the version last updated on February 14, 2023.

15. The Terms of Service hyperlink would open a new browser window on the Contributor's screen that displayed the document attached hereto as **Exhibit A**.

16. A Contributor could not proceed with the account creation process until she checked the box next to the statement, "I agree to the **Terms of Service** and **EU DPA**." Below is an excerpt of the screen depicting what Plaintiff Schuster would have seen when she created her Remotasks accounts on or about July 16, 2023:




17. Attached hereto as **Exhibit C** is a true and accurate copy of a screenshot which reflects the sign-up screen that would have been presented to Plaintiff Angela Schuster when she created her Remotasks account and consented to the Remotasks Terms on or about July 16, 2023.

**D. Plaintiffs Pendleton, McKinney, Schuster, and Retana Agreed to Outlier's Terms of Use Through Outlier's Account Creation Process**

18. Prior to September 11, 2024, when a Contributor would begin the process of creating an account on Outlier, the first screen a Contributor saw asked Contributors to "Accept the terms and conditions to create an account." Below this text, the webpage contained a checkbox and the following statement: "I agree to the **Terms of Service** and **acknowledge the Privacy Policy**." This sentence was presented in gray typeface except for the phrases "Terms of Service" and "acknowledge the Privacy Policy," which were in bold, blue typeface denoting hyperlinks. When clicked, each hyperlink would open a new window with the full text of the Terms of Use and the Privacy Policy, respectively.

19. The version of the Terms that was hyperlinked was the version last updated on February 7, 2023.

20. The Terms of Service hyperlink would open a new browser window on the Contributor's screen that displayed the document attached hereto as **Exhibit B**.

21. A Contributor could not proceed with the account creation process until he checked the box next to the statement, "I agree to the **Terms of Service** and **acknowledge the Privacy Policy**." Below is an excerpt of the screen depicting what Plaintiffs Pendleton, McKinney, Schuster[1], and Retana would have seen when they created their accounts prior to September 11, 2024:




22. Attached hereto as **Exhibit D** is a true and accurate copy of a screenshot which reflects the sign-up screen that would have been presented to Plaintiffs Anna Pendleton, Steve McKinney, Angela Schuster, and Xavier Retana when they created Outlier accounts and consented to the Terms prior to September 11, 2024.

**E. Plaintiffs Pendleton and McKinney Re-Affirmed Their Agreement to Outlier's Terms**

23. On or about April 8, 2024, Scale and Outlier implemented an update that required all existing Contributors, upon their next login, to re-review and re-confirm acceptance of the Terms. Because Plaintiffs Anna Pendleton and Steve McKinney had created their accounts prior to April 8, 2024, they were affected by this update.

---

[1] As discussed above, Plaintiff Angela Schuster created two separate accounts on Outlier using two different email addresses. Both accounts were created in July 2024. As such, Plaintiff Schuster went through the account creation process described here on two separate occasions and accepted Outlier's Terms twice.

24. Existing Contributors who created accounts prior to April 8, 2024 could not access the Outlier platform until they completed the re-affirmation process. Starting on April 8, 2024, when Contributors logged in to their existing accounts, Contributors saw a screen that stated: "In order to continue onto the Outlier platform, please read and agree to the Terms and Conditions and Privacy Policy." Below this text was a checkbox next to the statement: "I agree to the **Terms of Service** and **acknowledge the Privacy Policy**." This sentence was presented in gray typeface except for the phrases "Terms of Service" and "acknowledge the Privacy Policy," which were in bold, blue typeface denoting hyperlinks. When clicked, each hyperlink would open a new window with the full text of the Terms of Use and the Privacy Policy, respectively.

25. The "Terms of Service" hyperlink would open a new browser window on the Contributor's screen that displayed the document attached hereto as **Exhibit B**, which is the same version of the Terms of Use, last updated on February 7, 2023.

26. The Contributor's re-acceptance of the Terms was then logged in Scale's database.

27. Below is an example of what Plaintiffs Anna Pendleton and Steve McKinney would have seen when they reconveyed assent to Outlier's Terms in April 2024:



28. Attached hereto as **Exhibit E** is a true and accurate screenshot which reflects the screen that Plaintiffs Anna Pendleton and Steve McKinney would have been presented on or about April 15, 2024 and April 8, 2024, respectively, when they logged back into their Outlier accounts after Scale and Outlier issued the April 8, 2024 update.

29. Based on a review of Scale's records, I confirmed that, on or about April 15, 2024 and April 8, 2024, respectively, Plaintiffs Anna Pendleton and Steve McKinney each accepted the Terms a second time by checking the box next to the statement: "I agree to the **Terms of Service** and **acknowledge the Privacy Policy**."

**F. Plaintiffs Latoya Howard and Howard Quattlebaum Agreed to Outlier's Terms Through Outlier's Account Creation Process**

30. On or about September 11, 2024, Scale and Outlier updated the process for new Contributors to create accounts on Outlier. Starting on or about September 11, 2024, the first screen a Contributor saw asked Contributors to "Review Our Terms of Use and Privacy Policy." Below this text, the full text of the Terms was displayed in a textbox for the Contributor to scroll through and review. The version of the Terms that was displayed was still the same version attached hereto as **Exhibit B**, last updated on February 7, 2023.

31. Below the textbox, the webpage displayed a checkbox next to the statement: "I agree to the **Terms of Use** and **acknowledge the Privacy Policy**." This sentence was presented in gray typeface except for the phrases "Terms of Use" and "acknowledge the Privacy Policy," which were in bold, blue typeface denoting hyperlinks. When clicked, each hyperlink would open a new window with the full text of the Terms and the Privacy Policy, respectively. The Terms of Use hyperlink would open a new browser window on the Contributor's screen that displayed the document attached hereto as **Exhibit B**, which is the same version of the Terms of Use, last updated on February 7, 2023. Below is an excerpt of what a Contributor would have seen when they created an account on or after September 11, 2024. The red circle is added for emphasis to show the hyperlinks to the Terms and the Privacy Policy:


AI Content Reviewer

Welcome! Take the first step towards your new opportunity. Create an account to begin your application.

Review our Terms of Use and Privacy Policy

Last updated: Feb 7, 2023

Welcome to Outlier! These Terms of Use (the "Terms") are a binding agreement between you and Smart Ecosystem, Inc., a Delaware corporation ("Outlier"), regarding your access to and use of www.tryoutlier.com and any other associated mobile or web services or applications made generally available by Outlier (collectively, the "Outlier Site"). Outlier and its affiliates provide the Outlier Site to you subject to these Terms. These Terms consist of the terms and conditions below, and incorporate and include:

- the Outlier Community Guidelines ("Community Guidelines");
- the Outlier Privacy Policy ("Privacy Policy");

I agree to the Terms of Use and acknowledge the Privacy Policy

I understand that I will be entrusted confidential information. I agree that I will not use the information except to perform tasks on Outlier and will not disclose the information to anyone.

I confirm that I am 18 years of age or older.

Submit and sign up with email

Submit and sign up with Google

I have an existing account

32. Attached hereto as **Exhibit F** is a true and accurate copy of a screenshot which reflects the sign-up screen that new Contributors like Plaintiffs Latoya Howard and Howard Quattlebaum would have seen when they created an Outlier account and consented to the Terms on or after September 11, 2024.

33. The webpage did not allow Contributors to check the box to agree to the Terms without first scrolling through the textbox with the full text of the Terms. If the Contributor attempted to check the box without first accessing the Terms, the box would remain unchecked and a prompt would pop up stating: "Please read through the Terms of Use and check the box to agree before continuing." Thus, as before, a Contributor could not proceed past this screen to complete the account-creation process without accessing the Terms checking the box signifying agreement to those Terms. Below is an excerpt of the screen depicting what a Contributor would have seen if they attempted to check the

box agreeing to the Terms without first accessing the Terms. The red circle is added for emphasis to show the pop-up notification that would occur if the Contributor attempted to check the box agreeing to the Terms without first scrolling through the textbox displaying the Terms:




34. Attached hereto as **Exhibit G** is a true and accurate screenshot which reflects the message that would have been presented to a Contributor on or after September 11, 2024, if they attempted to check the box to accept the Terms without first clicking the hyperlink to access the full text of the Terms.

35. Based on a review of Scale's records, I confirmed that Plaintiffs Latoya Howard and Howard Quattlebaum followed this process and accepted the Terms on October 13, 2024 and November 27, 2024, respectively, by checking the box next to the statement: "I agree to the **Terms of Use** and **acknowledge the Privacy Policy**."

### G. The Arbitration Provision in the Terms

36. As mentioned above, the Terms for Outlier and Remotasks are substantively identical. Attached hereto as **Exhibit A** is a true and accurate copy of Remotasks' Terms, dated February 14, 2023 and printed on March 18, 2025. **Exhibit B** is a true and accurate copy of Outlier's Terms, dated February 7, 2023 and printed on April 19, 2024.

37. These agreements are the versions of the Terms that were presented to Plaintiffs and to which Plaintiffs consented when they created their accounts on Remotasks and Outlier, respectively.

38. Remotasks' Terms have also been available for review by Plaintiffs at any time on Remotasks' website at https://www.remotasks.com/en/legal/terms.

39. Outlier's Terms have also been available for review by Plaintiffs at any time on Outlier's website. From May 2023 to May 2024, the Terms were available at http://tryoutlier.com/legal-pages/terms-of-use. After May 2024, the Terms were available at both http://tryoutlier.com/legal-pages/terms-of-use and https://outlier.ai/legal/terms-of-use.

40. The second paragraph of the Terms states[2]:

> "By registering for or accessing the Outlier Site, you accept these Terms and warrant and represent that you are at least 18 years old or the age of legal majority in your jurisdiction and you have authority to bind yourself to these Terms. Please read these Terms, including the arbitration agreement in Section 13, carefully." Ex. B at 1.

41. Section 13 "Applicable Law; Disputes" includes an arbitration agreement, which beings: "ARBITRATION-PLEASE READ." Ex. B at 12–13. This paragraph states in relevant part:

> "If your country of residence or establishment is the United States, the parties mutually agree that any dispute relating in any way to these Terms, the Outlier Systems, or Outlier Materials will be resolved by binding arbitration, rather than in court, except that you may assert claims in small claims court if your claims qualify. Except as specifically set forth in this Section 13, if there is a dispute about whether this arbitration agreement can be enforced or applies, the

[2] While the Terms for both Remotasks and Outlier are substantively identical, these quotes are pulled from Outlier's Terms since all Plaintiffs most recently agreed to Outlier's Terms.

parties agree that the arbitrator will decide that issue. The Federal Arbitration Act and federal arbitration law will govern this arbitration provision." Ex. B at 12–13.

The arbitration agreement includes additional terms set forth in Section 13.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct. Executed at this 2nd day of April, 2025, at San Francisco, California.

Signed by:
Christopher Stephens
EE9CFCAD729348D

Christopher Stephens
Director, Platform Engineering