UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA SCHUSTER, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>SCALE AI, INC., et al.,<br><br>　　　　Defendants. | Case No.  3:25-cv-00620-JSC<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 17 |

Angela Schuster, Anna Pendleton, Howard Quattlebaum, Xavier Retana, Latoya Howard, and Steve McKinney bring this putative class action alleging negligence claims against Scale AI, Inc., Smart Ecosystem, Inc., and Outlier AI.[1] Scale AI and its subsidiary Smart Ecosystem operate a platform called Outlier which provides independent contractors, such as Plaintiffs, opportunities to sign up for project-based work creating and curating data for Scale AI's generative AI engine. Defendants move to compel arbitration based on an arbitration agreement within the Terms of Use for the Outlier and/or its predecessor Remotask, platforms. (Dkt. No. 17.[2]) The parties' briefing indicates there may be a dispute as to contract formation.   As discussed below, the Court CONTINUES the August 28 2025 hearing to September 11, 2025 to provide the parties the opportunity to address this issue.

**DISCUSSION**

The Federal Arbitration Act ("FAA") provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of

---

[1] The parties have stipulated to dismissal of Outlier AI.  (Dkt. No. 26.)
[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

1  any contract." 9 U.S.C. § 2. Under the FAA, "arbitration agreements [are] on an equal footing with
2  other contracts," and therefore courts must "enforce them according to their terms." *Rent-A-*
3  *Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). A party may
4  petition a court to compel "arbitration [to] proceed in the manner provided for in such agreement."
5  9 U.S.C. § 4. A court must compel arbitration should it determine: (1) a valid arbitration
6  agreement exists; and (2) "the agreement encompasses the dispute at issue." *Berman v. Freedom*
7  *Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (internal citation omitted).

The existence of an arbitration agreement is a question for the Court, not an arbitrator. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *see also Reichert v. Rapid Invs.*, Inc., 826 F. App'x 656, 658 (9th Cir. 2020) ("Notwithstanding any delegation clause in the Agreement, 'challenges to the existence of a contract as a whole must be determined by the court prior to ordering arbitration.'") (cleaned up). As the parties seeking to compel arbitration, Defendants bear the burden of proving the existence of an agreement to arbitrate. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). When, as here, "the making of the arbitration agreement" is at issue, the summary judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting 9 U.S.C. § 4). To prevail under the summary judgment standard, Defendants must show there is no genuine issue as to any material fact regarding formation of the arbitration contract. *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there is a genuine issue of fact, the case must proceed to trial on the contract formation issue. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th at 672 ("[i]f the making of the arbitration agreement … [is] in issue, the court shall proceed summarily to the trial thereof.") (quoting 9 U.S.C. § 4).

Defendants' motion to compel arbitration attaches a declaration from Scale's Director of Platform Engineering Christopher Stephens who attests he "has knowledge of Defendants' operations and business model" and "access to and personal knowledge of the matters and information set forth in this Declaration." (Dkt. No. 17-1 at ¶ 4.) Mr. Stephens further attests the records attached to his declaration

> are true and correct copies of records that were kept in the course of

2

> usual business activity, were prepared as a regular practice and custom, and were prepared by company personnel in the ordinary course of regularly conducted business at or near the time of the act, event, and communication reported thereon, and by persons with knowledge of and a business duty to record and/or transmit the actions, communications and events that were recorded.

(*Id.* at ¶ 5.) Mr. Stephens goes on to describe the process by which independent contractors ("Contributors" as Defendants call them) obtain projects, and as relevant here, the account creation process, which according to Mr. Stephens, requires users to accept and agree to the Terms of Use containing the at-issue arbitration provision. (*Id.* at ¶¶ 7-9.) Mr. Stephens attests Scale's records include information about "Contributors' account activity" which is "recorded contemporaneously at the time of each transaction and is maintained in the regular course of Scale's business." (*Id.* at ¶ 11.) Based on these records, he attests to the date on which each Plaintiff created an account with Outlier and/or Remotasks. (*Id.* at ¶ 12.) He also offers screenshots of what each Plaintiff would have seen when creating their accounts. (*Id.* at ¶¶ 13-22.) Finally, he includes screenshots of a "reaffirmation process" he attests Plaintiff Pendleton and Plaintiff McKinney went through whereby they were required to again agree to the Terms of Use. (*Id.* at ¶¶ 23-24.)

In opposing the motion to compel arbitration, Plaintiffs argue Defendants have not met their burden of demonstrating a valid agreement to arbitrate because (1) they offer only inadmissible hearsay evidence, and (2) each Plaintiff denies awareness of the arbitration agreements or that they manifested their assent to arbitrate. (Dkt. No. 19.)

As to the first issue, on a motion to compel arbitration, a court does not "focus on the admissibility of the evidence's form, so long as the contents are capable of presentation in an admissible form at trial." *Lomeli v. Midland Funding, LLC*, No. 19-CV-01141-LHK, 2019 WL 4695279, at *7 (N.D. Cal. Sept. 26, 2019); *see also Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). Mr. Stephens can testify to the facts in his declaration, which are relevant and based on his personal knowledge and/or knowledge obtained from his review of Defendants' documents and records kept in the course of the regularly conducted activity of their business. *See* Fed. R. Evid. 803(6), 901(b)(1).

3

As to the manifestation of assent issue, "[i]n determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). "To form a contract under ... California law, the parties must manifest their mutual assent to the terms of the agreement." *Id.* "Parties traditionally manifest assent by written or spoken word, but they can also do so through conduct." *Id.* "However, '[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" *Id.* (alteration in original) (quoting Restatement (Second) of Contracts § 19(2) (1981)). "These elemental principles of contract formation apply with equal force to contracts formed online. Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Berman*, 30 F.4th 8 at 855–56.

"To avoid the unfairness of enforcing contractual terms that consumers never intended to accept, courts confronted with online agreements . . . have devised rules to determine whether meaningful assent has been given. Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at 856 (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1173 (9th Cir. 2014)). "Reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility." *Berman*, 30 F.4th at 856 (cleaned up).

In opposition to the motion to compel arbitration, each Plaintiff submitted a declaration attesting they were not presented with a checkbox requiring them to accept the Terms of Use to create an account. (Dkt. No. 19-7, Schuster Decl. at ¶¶ 6-8; Dkt. No. 19-5, Quattlebaum Decl. at ¶¶ 7-9; Dkt. No. 19-6, Retana Decl. at ¶¶ 5-6; Dkt. No. 19-2, Howard Decl. at ¶¶ 7-9; Dkt. No. 19-3, McKinney Decl. at ¶¶ 5-10; Dkt. No. 19-4, Pendleton Decl. at ¶¶ 7-12.)   That is, Plaintiffs

4

directly contradict the screenshot account registration process described in Mr. Stephens's declaration.

On reply, Mr. Stephens offered a second declaration wherein he attests he reviewed the computer code in the Outlier system and it "reflects (1) whether a user clicked the checkbox, and (2) the exact time the checkbox was clicked." (Dkt. No. 21-2 at ¶ 9.) He then provides the date and time each Plaintiff checked the box as part of the account creation, or in the case of McKinney and Pendleton, the date and time they completed the reaffirmation process. (*Id.* at ¶¶ 9-14.) Because Defendants offered this evidence on reply, Plaintiffs have not had the opportunity to respond.

Accordingly, Plaintiffs and Defendants shall meet and confer regarding this new evidence and whether, in light of the evidence, Plaintiffs still contend they were not presented with the Terms of Use. And, if so, then the parties shall also meet and confer on what discovery, if any, is required from each side regarding the making of the agreement issue and also attempt to agree on a discovery schedule. The parties shall make a joint submission by September 4, 2025 that sets forth their agreements and disagreements, if any, regarding the above.

In light of the above, the August 28, 2025 hearing on the motion to compel is CONTINUED to September 11, 2025 at 10:00 a.m. in person.

**IT IS SO ORDERED.**

Dated: August 25, 2025

JACQUELINE SCOTT CORLEY
United States District Judge